JUDGE SCHEINDLIN

**14 CV 3727**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUZANNA BOWLING, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Civil Action No. |
| v. | **CLASS ACTION COMPLAINT** |
| JOHNSON & JOHNSON, McNEIL-PPC, INC., and JOHNSON & JOHNSON HEALTHCARE PRODUCTS, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Suzanna Bowling ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Johnson & Johnson, McNeil-PPC, Inc., and Johnson & Johnson Healthcare Products (collectively, "Defendants"). Plaintiff makes the following allegations based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action lawsuit regarding Defendants' false and misleading labeling of Listerine Total Care Fresh Mint Anticavity Mouthwash, Listerine Total Care Zero Fresh Mint Anticavity Mouthwash, Listerine Total Care Cinnamint Anticavity Mouthwash, and Listerine Total Care Plus Whitening (together, "Listerine Total Care"), each of which uniformly claims that the product "Restores Enamel" (the "Misrepresentation" or the "Express Warranty"), which the label expressly identifies as a "benefit" provided by the product. However, an overwhelming consensus of medical and dental experts concludes that the loss of tooth enamel is permanent. Stated otherwise, tooth enamel can never be restored once it is gone. Thus, Listerine Total Care's label is false and misleading. The product does not restore enamel.

1

2. The false and misleading labels offering to "Restore[] Enamel" were highly material to consumers and served to differentiate Listerine Total Care from comparable mouthwash products. This label allowed Defendants to charge a 35.8% price premium for Listerine Total Care.

3. In fact, Listerine Total Care is essentially identical to Listerine Fluoride Defense Anticativity Mouthwash ("Listerine Fluoride Defense"). Both products have the same active ingredient, in the same amount, the same indicated uses, the same warnings, the same directions, and the same inactive ingredients. There are only three differences between Listerine Total Care and Listerine Fluoride Defense: the packaging, the color, and the price: (1) Listerine Total Care's packaging includes claims that the product will "Restore[] Enamel," while the packaging for Listerine Fluoride Defense simply claims that it will "Strengthen[] Enamel;" (2) Listerine Total Care uses a slightly different coloring additive than Listerine Fluoride Defense, making it appear purple instead of blue; and (3) Listerine Total Care is priced at $9.49 for a 1.0 liter bottle, compared to $6.99 for Listerine Fluoride Defense – a 35.8% price premium.

|  | **Listerine Total Care Fresh Mint Anticavity Mouthwash** | **Listerine Fluoride Defense** |
|---|---|---|
| **Active Ingredient** | Sodium fluoride 0.02% (0.01% w/v fluoride ion) | Sodium fluoride 0.02% (0.01% w/v fluoride ion) |
| **Purpose** | Anticavity mouthwash labeled to "**Restore[]** Enamel" (emphasis added) | Anticavity mouthwash labeled to "**Strengthen[]** Enamel" (emphasis added) |
| **Uses** | aids in the prevention of dental cavities | aids in the prevention of dental cavities |
| **Warnings** | **Keep out of reach of children.** If more than used for rinsing is accidentally swallowed, get medical help or contact a Poison Control Center right away. | **Keep out of reach of children.** If more than used for rinsing is accidentally swallowed, get medical help or contact a Poison Control Center right away. |

2

|  | **Listerine Total Care Fresh Mint Anticavity Mouthwash** | **Listerine Fluoride Defense** |
|---|---|---|
| **Directions** | • Adults and children 12 years of age and older:<br>  • use twice daily after brushing your teeth with a toothpaste<br>  • vigorously swish 10 ml (2 teaspoonfuls) of rinse between your teeth for 1 minute and then spit out<br>  • do not swallow the rinse<br>  • do not eat or drink for 30 minutes after rinsing<br>  • supervise children as necessary until capable of using without supervision<br>• Children under 12 years of age: consult a dentist or doctor | • Adults and children 12 years of age and older:<br>  • use twice daily after brushing your teeth with a toothpaste<br>  • vigorously swish 10 ml (2 teaspoonfuls) of rinse between your teeth for 1 minute and then spit out<br>  • do not swallow the rinse<br>  • do not eat or drink for 30 minutes after rinsing<br>  • supervise children as necessary until capable of using without supervision<br>• Children under 12 years of age: consult a dentist or doctor |
| **Other Information** | • store at controlled room temperature 20º-25ºC (68º-77ºF)<br>• cold weather may temporarily cloud this product | • store at controlled room temperature 20º-25ºC (68º-77ºF)<br>• cold weather may temporarily cloud this product |
| **Inactive Ingredients** | water, sorbitol solution, alcohol (21.6%), poloxamer 407, sodium lauryl sulfate, eucalyptol, flavor, methyl salicylate, thymol, phosphoric acid, sucralose, menthol, disodium phosphate, **FD&C red no. 40**, FD&C blue no. 1 (emphasis added) | water, sorbitol solution, alcohol (21.6%), poloxamer 407, sodium lauryl sulfate, eucalyptol, flavor, methyl salicylate, thymol, phosphoric acid, sucralose, menthol, disodium phosphate, FD&C blue no. 1 |
| **Color** | purple | blue |
| **Price** | **$9.49 for 1.0 liters** | **$6.99 for 1.0 liters** |

4. It appears that Defendants made no change to Listerine Total Care, except to add FD&C red no. 4, an inactive food coloring, making the product appear purple instead of blue. This change has no medicinal significance. Nevertheless, Defendants added the claim that the product will purportedly "Restore[] Enamel" to the label, added $2.50 to the price, and called the resulting product Listerine Total Care. Defendants would not be able to charge a premium for Listerine Total Care without misrepresenting that the product "Restores Enamel."

5. Plaintiff seeks relief in this action individually, and on behalf of a class of purchasers for violation of the Magnuson Moss Warranty Act, breach of express warranty,

breach of the implied warranty of merchantability, unjust enrichment, violation of New York's General Business Law § 349, violation of New York's General Business Law § 350, negligent misrepresentation, and fraud.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 (federal question). This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

7. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and Plaintiff, as well as most members of the proposed class, is a citizen of a state different from the states of at least one of the Defendants. On March 29, 2011, Forbes reported that Listerine Total Care sold $39.8 million worth of product in 2010 alone – its first year on the market – making it one of "The Year's Best-Selling New Home Care And Beauty Products."[1]

8. This Court has personal jurisdiction over Defendants because Defendants conduct substantial business within New York, such that Defendants have significant, continuous, and pervasive contacts with the State of New York.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the challenged labeling and marketing practices have been disseminated and committed in this District and because Defendants are subject to personal jurisdiction in this District.

## THE PARTIES

10. Plaintiff Suzanna Bowling is a citizen of New York, residing in New York, New York. In November 2013, Plaintiff Bowling purchased Listerine Total Care for approximately $9.49 from Duane Reade at 721 9th Avenue, New York, New York 10019. Like the vast majority of adults, Ms. Bowling suffers from loss of tooth enamel. Prior to her purchase of Listerine Total Care, Ms. Bowling reviewed the product's labeling and packaging. The bottle

---

[1] *See* http://www.forbes.com/2011/03/29/best-new-products-leadership-sales-leadership-2010-non-food_slide_11.html.

she purchased represented that Listerine Total Care would "Restore[] Enamel."  Plaintiff Bowling saw this representation prior to and at the time of purchase, and understood it as a representation and warranty that Listerine Total Care would, in fact, "Restore[] Enamel."  Plaintiff Bowling reasonably understood the word "restore" to carry its everyday meaning:  that Listerine Total Care would purportedly replace her lost tooth enamel.  Plaintiff Bowling relied on this representation and warranty in deciding to purchase Listerine Total Care.  Accordingly, this representation and warranty was part of the basis of the bargain, in that she attributed value to this purported "benefit" and would not have purchased Listerine Total Care had she known that the product would not, in fact, restore her lost tooth enamel.  In reliance on this representation and warranty, Plaintiff Bowling paid a tangible increased cost for Listerine Total Care, which was worth less than represented because Listerine Total Care does not, in fact, restore enamel.  Ultimately, Listerine Total Care is totally ineffective at "Restor[ing] Enamel," and therefore cannot provide that product "benefit" as advertised and represented on the label.  Plaintiff Bowling also understood that in making the sale, her retailer was acting with the knowledge and approval of the Defendants and/or as the agent of the Defendants.  Plaintiff Bowling further understood that the purchase involved a direct transaction between herself and Defendants, because the purchase came with Defendants' representation and warranty that Listerine Total Care does, in fact, "Restore[] Enamel."

11. Defendant Johnson & Johnson is a New Jersey corporation with its principal place of business at One Johnson & Johnson Plaza, New Brunswick, New Jersey.  Johnson & Johnson is an international medical device, pharmaceutical, and consumer goods manufacturer founded in 1886.  Its common stock is a component of the Dow Jones Industrial Average, and the company is listed in the Fortune 500.

12. Defendant McNeil-PPC, Inc. is a New Jersey corporation with its principal place of business at 199 Grandview Road, Skillman, New Jersey.  McNeil-PPC, Inc. is a subsidiary of Defendant Johnson & Johnson.

13. Defendant Johnson & Johnson Healthcare Products is a division of Defendant McNeil-PPC, Inc. with its principal place of business at 199 Grandview Road, Skillman, New Jersey.

14. Defendants market and sell Listerine Total Care widely throughout New York and other states. Defendants have manufactured, marketed, and sold Listerine Total Care using the deceptive and misleading claims described herein since at least 2010. Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendants who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

15. Each of the Defendants acted jointly to perpetrate the acts described herein. At all times relevant to the allegations in this matter, each Defendant acted in concert with, with the knowledge and approval of, and/or as the agent of the other Defendants within the course and scope of the agency, regarding the acts and omissions alleged.

## FACTS COMMON TO ALL CAUSES OF ACTION

### A.  *Medical And Dental Experts Overwhelmingly Agree That The Loss Of Tooth Enamel Is Permanent*

16. Tooth enamel is a hard, thin, translucent layer of acellular mineralized tissue consisting of 96-98% calcium hydroxyapatite that covers the crown of a tooth. Critically, the calcium hydroxyapatite found in tooth enamel is arranged in a crystalline lattice pattern of highly-structured, interlocking molecules. Even though tooth enamel is harder than any other mineralized tissue in the body, it can still be eroded through acid-producing bacteria acting on food products on the enamel surface. This process of erosion, is called demineralization, serves to weaken the underlying lattice structure of enamel. Fortunately, natural saliva and fluoride products can strengthen demineralized tooth enamel over time. However, if demineralization weakens the lattice beyond a certain point, the tooth enamel is destroyed and permanently lost. The American Dental Association estimates that at least 90% of adults have experienced issues due to lost tooth enamel. The normal rate of attrition and wear for tooth enamel is about 8 micrometers per year for adults.

6

17.     Medical and dental experts overwhelmingly agree that the loss of tooth enamel is permanent.  Once it is gone, it can never be replaced.  Indeed, there are no established medical procedures to restore lost enamel.  Unsurprisingly, tooth enamel cannot be restored by using Listerine Total Care.

18.     For example, the sixth edition of *Histology* by Dr. Michael H. Ross, et al., one of the seminal books on the topic, concludes that, "Enamel is an acellular mineralized tissue that covers the crown of the tooth.  <u>Once formed it cannot be replaced</u>." (emphasis added).  The same language also appears in the fourth edition of *Histology*.

19.     Moreover, the Wikipedia article on *Tooth Enamel* concludes that, "[E]namel, unlike many other tissues of the body, has no way to regenerate itself.  After destruction of enamel from decay or injury, <u>neither the body nor a dentist can restore the enamel tissue</u>." (emphasis added).

20.     Similarly, the Wikipedia article on *Remineralisation of Teeth* concludes that, "Cavities result when the rate of demineralization exceeds the rate of remineralisation and the latticework [of tooth enamel] is destroyed, typically in a process that requires many months or years."  When this occurs, the body "cannot replace lost tooth material."

21.     Furthermore, on November 15, 2011, Dr. Alfred D. Wyatt Jr., writing on behalf of WebMD, published a slide presentation called *What Causes Tooth Enamel Damage?*  The presentation concludes that, "Acids from foods and bacteria can eat away at [tooth enamel], causing erosion and cavities… Enamel can also be chipped or cracked.  <u>And unlike bone, enamel can't grow back on its own.  The damage is permanent.</u>" (emphasis added).

22.     Additionally, on July 8, 2010, Dr. Burnilda Nazario, writing on behalf of WedMD, published an article called *Tooth Enamel Erosion*.  The article concludes that damaged tooth enamel could be fixed in one of two ways.  First, "[t]ooth bonding can protect a tooth with enamel erosion and improve the appearance of teeth that are worn, chipped, or discolored."  Second, "[i]f enamel loss is significant, a dentist may cover the tooth with a crown to protect it from further damage."  As tooth enamel loss is permanent, the article does not discuss any other remedy.

7

23.     Lastly, in 2012, Procter & Gamble wrote an article on the Crest website called "How to Rebuild Tooth Enamel."  Citing to the American Dental Association, Procter & Gamble concluded that "[E]namel is not living tissue, so *your body can't rebuild tooth enamel that has been damaged or worn away* due to erosion from dietary acids." (emphasis added).  Where loss of tooth enamel has occurred, Procter & Gamble recommends asking a dental professional about tooth bonding or crowns.  No other remedy is discussed.

B.      *Listerine Total Care Is Mislabeled*

24.     In light of the weight of authority discussed above, Listerine Total Care is plainly mislabeled.  It is impossible for a mouthwash to replace lost tooth enamel.  Nonetheless, Defendants falsely represent that Listerine Total Care will "Restore[] Enamel" in two separate places:  once on the front of the label, and again on the back.

25.     A reasonable consumer would read and rely upon the misrepresentation that Listerine Total Care "Restores Enamel" prior to purchase.  And here, Plaintiff Bowling read and relied upon this precise misrepresentation.  *See supra*.

26.     The misrepresentation that Listerine Total Care can "Restore[] Enamel" is highly material to consumers.  Critically, Listerine Total Care sells at a price premium compared to other varieties of Listerine that do not claim to "Restore[] Enamel."  For example, Listerine Fluoride Defense contains identical ingredients compared to Listerine Total Care (with the exception of red food coloring), but it costs $2.50 less and does not claim to "Restore[] Enamel." *See supra*.  If this representation were not material, then a reasonable consumer would rationally decide to pay less for Listerine Fluoride Defense.

27.     Moreover, a reasonable consumer would understand the word "restore" to carry its everyday meaning:  that Listerine Total Care can purportedly replace lost tooth enamel.  For example, Merriam-Webster Dictionary defines "restore" to mean "to give back (someone or something that was lost or taken), to return (someone or something); to put or bring (something) back into existence or use."  *See* http://www.merriam-webster.com/dictionary/restore.

## **CLASS ACTION ALLEGATIONS**

28.     Plaintiff seeks to represent a class defined as all persons in the United States who purchased Listerine Total Care for personal or household use, excluding those who purchased Listerine Total Care for resale (hereafter, the "Class").

29.     Plaintiff Bowling also seeks to represent a subclass defined as all members of the Class who purchased Listerine Total Care within the State of New York (the "Subclass").

30.     Members of the Class and Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and Subclass number in the millions.  The precise number of members of the Class and Subclass and their identities are unknown to Plaintiff at this time but may be determined through discovery of Defendants' records.  Class members may be notified of the pendency of this action by mail, email, and/or publication through the distribution records of Defendants and third party retailers and vendors.

31.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to:

   a.    Whether Defendants violated the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*;

   b.    Whether Defendants breached an express warranty made to Plaintiff and the Class;

   c.    Whether Defendants breached an implied warranty made to Plaintiff and the Class;

   d.    Whether Defendants were unjustly enriched by their conduct;

   e.    Whether Defendants advertised or marketed Listerine Total Care in a way that was false or misleading;

   f.    Whether Defendants' conduct was false, misleading, or reasonably likely to deceive ordinary consumers;

   g.    Whether Class members have been injured by Defendants' conduct;

9

      h.      Whether Class members suffered an ascertainable loss as a result of Defendants' Misrepresentation; and

      i.      Whether Class members are entitled to damages, restitution, injunctive relief, and/or monetary relief and, if so, the amount and nature of such relief.

32.    Plaintiff Bowling and members of the Subclass have questions of fact and common law to them that predominate over any questions affecting only individual members of the Subclass.  These common questions include:

      a.      Whether Defendants violated New York's General Business Law § 349;

      b.      Whether Defendants violated New York's General Business Law § 350; and

      c.      The appropriate measure of damages to be received by Plaintiff and the Subclass.

33.    The claims of the named Plaintiff are typical of the claims of the Class in that Plaintiff (a) was exposed to Defendants' false and misleading labeling and packaging of Listerine Total Care; (b) relied on Defendants' Misrepresentation; and (c) suffered a loss as a result of her purchase.  Each Class member was subjected to the same conduct, was harmed in the same way, and has claims for relief under the same legal theories.

34.    Plaintiff is an adequate representative of the Class and Subclass because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

35.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single

adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### Violation Of The Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.*

36.	Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

37.	Plaintiff brings this claim individually and on behalf of the members of the Class and Subclass against all Defendants.

38.	Listerine Total Care is a consumer product as defined in 15 U.S.C. § 2301(1).

39.	Plaintiff and Class members are consumers as defined in 15 U.S.C. § 2301(3).

40.	Defendants are suppliers and warrantors as defined in 15 U.S.C. §§ 2301(4) and (5).

41.	In connection with the sale of Listerine Total Care, Defendants issued a written warranty as defined in 15 U.S.C. § 2301(6), by making an express warranty that Listerine Total Care would "Restore[] Enamel."  Thus, a reasonable consumer would expect that Listerine Total Care does, in fact, restore enamel.

42.	However, Listerine Total Care does not conform to the Express Warranty because the product does not, in fact, restore enamel.

43.	By reason of Defendants' breach of Express Warranty, Defendants violated the statutory rights due to Plaintiff and Class members pursuant to the MMWA, thereby damaging Plaintiff and Class members. *See* 15 U.S.C. §§ 2301, *et seq*.

44.	Plaintiff and members of the Class were injured as a direct and proximate result of Defendants' breach because (a) they would not have purchased Listerine Total Care if they had known that the product did not "Restore[] Enamel;" (b) they paid a price premium for Listerine Total Care based on Defendants' Express Warranty; and (c) Listerine Total Care did not have the characteristics, uses, or benefits as promised, namely that the product purportedly "Restores Enamel."

45.     Pursuant to 15 U.S.C. § 2310(d)(1), Plaintiff and the Class are entitled to recover the damages caused to them by Defendants' breaches of written and implied warranty, which either constitute the full purchase price of Listerine Total Care or the difference in value between Listerine Total Care as warranted and the product as sold.  In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and the Class are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by Plaintiff and the Class in connection with the commencement and prosecution of this action.

## COUNT II
### Breach Of Express Warranty

46.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

47.     Plaintiff brings this claim individually and on behalf of the members of the Class and Subclass against all Defendants.

48.     In connection with the sale of Listerine Total Care, Defendants issued a written Express Warranty.  Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers expressly warranted that Listerine Total Care was fit for its intended purpose by making the Express Warranty – that is, that Listerine Total Care purportedly "Restores Enamel" – to Plaintiff and the Class.

49.     Defendants' Express Warranty, and their affirmations of fact and promises made to Plaintiff and the Class regarding Listerine Total Care, became part of the basis of the bargain between Defendants and Plaintiff and the Class, thereby creating an express warranty that Listerine Total Care would conform to those affirmations of fact, representations, promises, and descriptions.

50.     Listerine Total Care does not, in fact, "Restore[] Enamel."  The loss of tooth enamel is permanent, and it cannot be restored by using Listerine Total Care.

51.     Plaintiff and members of the Class were injured as a direct and proximate result of Defendants' breach because (a) they would not have purchased Listerine Total Care if they had

known that the product did not "Restore[] Enamel;" (b) they paid a price premium for Listerine Total Care based on Defendants' Express Warranty; and (c) Listerine Total Care did not have the characteristics, uses, or benefits as promised, namely that the product purportedly "Restores Enamel."  As a result, Plaintiff and members of the Class have been damaged either in the full amount of the purchase price of Listerine Total Care or in the difference in value between Listerine Total Care as warranted and the product as actually sold.

## COUNT III
### Breach Of The Implied Warranty Of Merchantability

52. Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

53. Plaintiff brings this claim individually and on behalf of the members of the Class and Subclass against all Defendants.

54. Defendants are and were at all relevant times "merchants" within the meaning of the Uniform Commercial Code ("UCC").  Defendants manufactured, distributed, and marketed Listerine Total Care, which is a "good" within the meaning of the UCC.  Consequently, Defendants impliedly warranted that Listerine Total Care was merchantable, including that it could pass without objection in the trade under the contract description, that it was fit for the ordinary purposes for which such goods are used, that it was of fair average quality within the description, that it was adequately labeled, and that it would conform to the promises or affirmations of fact made on its container or labels.  However, each of these implied warranties was false with respect to the goods of the kind sold to Plaintiff and members of the Class and Subclass.

55. In reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose, Plaintiff and Class members purchased Listerine Total Care for the purpose of using a mouthwash that would purportedly "Restore[] Enamel."

56. Listerine Total Care was not altered by Plaintiff or members of the Class.

57. Listerine Total Care was defective when it left the exclusive control of Defendants.

13

58. Defendants knew Listerine Total Care would be purchased and consumed by Plaintiff and members of the Class without additional testing for efficacy. Listerine Total Care was unfit for its intended purpose, and Plaintiff and members of the Class did not receive the goods as warranted.

59. More specifically, Defendants breached their implied warranty of merchantability to Plaintiff and the Class because Listerine Total Care would not pass without objection in the trade because it was incapable of performing the functions it was intended to perform.

60. As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiff and Class members were injured because (a) they would not have purchased Listerine Total Care if they had known that the product did not "Restore[] Enamel;" (b) they paid a price premium for Listerine Total Care based on Defendants' Express Warranty; and (c) Listerine Total Care did not have the characteristics, uses, or benefits as promised, namely that the product purportedly "Restores Enamel." As a result, Plaintiff and members of the Class have been damaged either in the full amount of the purchase price of Listerine Total Care or in the difference in value between Listerine Total Care as warranted and the product as actually sold.

## COUNT IV
### Unjust Enrichment / Common Law Restitution

61. Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

62. Plaintiff brings this claim individually and on behalf of the members of the Class and Subclass against all Defendants.

63. Plaintiff and members of the Class conferred benefits on Defendants by purchasing Listerine Total Care.

64. Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchases of Listerine Total Care. Retention of those monies under these circumstances is unjust and inequitable because of Defendants' Misrepresentation about Listerine Total Care – that the product "Restores Enamel" – which caused injuries to

Plaintiff and members of the Class because they would not have purchased Listerine Total Care if the true facts had been known.

65. Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Class is unjust and inequitable, Defendants must pay restitution to Plaintiff and members of the Class for their unjust enrichment, as ordered by the Court.

## COUNT V
### Deceptive Acts Or Practices,
### New York Gen. Bus. Law § 349

66. Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

67. Plaintiff brings this claim individually and on behalf of the members of the Subclass against all Defendants.

68. By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices by making the Misrepresentation.

69. The foregoing deceptive acts and practices were directed at consumers.

70. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics, ingredients, and benefits of Listerine Total Care to induce consumers to purchase same.

71. Plaintiff and members of the Subclass were injured because (a) they would not have purchased Listerine Total Care if they had known that the product did not "Restore[] Enamel;" (b) they paid a price premium for Listerine Total Care based on Defendants' Express Warranty; and (c) Listerine Total Care did not have the characteristics, uses, or benefits as promised, namely that the product purportedly "Restores Enamel."  As a result, Plaintiff and members of the Subclass have been damaged either in the full amount of the purchase price of Listerine Total Care or in the difference in value between Listerine Total Care as warranted and the product as actually sold.

72. On behalf of herself and other members of the Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover her actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT VI
### False Advertising,
### New York Gen. Bus. Law § 350

73. Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

74. Plaintiff brings this claim individually and on behalf of the members of the Subclass against all Defendants.

75. Based on the foregoing, Defendants have engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law.

76. Defendants' false, misleading, and deceptive statements and representations of fact, including but not limited to the Misrepresentation, were and are directed to consumers.

77. Defendants' false, misleading, and deceptive statements and representations of fact, including but not limited to the Misrepresentation, were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

78. Defendants' false, misleading, and deceptive statements and representations of fact, including but not limited to the Misrepresentation, have resulted in consumer injury or harm to the public interest.

79. Plaintiff and members of the Subclass have been injured because (a) they would not have purchased Listerine Total Care if they had known that the product did not "Restore[] Enamel;" (b) they paid a price premium for Listerine Total Care based on Defendants' Express Warranty; and (c) Listerine Total Care did not have the characteristics, uses, or benefits as promised, namely that the product purportedly "Restores Enamel." As a result, Plaintiff and members of the Subclass have been damaged either in the full amount of the purchase price of

16

Listerine Total Care or in the difference in value between Listerine Total Care as warranted and the product as actually sold.

80. As a result of Defendants' false, misleading, and deceptive statements and representations of fact, including but not limited to the Misrepresentation, Plaintiff has suffered and will continue to suffer economic injury.

81. Plaintiff and members of the Subclass suffered an ascertainable loss caused by Defendants' Misrepresentation because they paid more for Listerine Total Care than they would have had they known the truth about the product.

82. On behalf of herself and other members of the Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover her actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT VII
### Negligent Misrepresentation

83. Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

84. Plaintiff brings this claim individually and on behalf of the members of the Class and Subclass against all Defendants.

85. As discussed above, Defendants represented that Listerine Total Care will "Restore[] Enamel," but failed to disclose that the loss of tooth enamel is permanent, and it cannot be restored by using Listerine Total Care.  Defendants had a duty to disclose this information.

86. At the time Defendants made these representations, Defendants knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

87. At an absolute minimum, Defendants negligently misrepresented and/or negligently omitted material facts about Listerine Total Care.

88.     The negligent misrepresentations and omissions made by Defendants, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase Listerine Total Care.

89.     Plaintiff and Class members would not have purchased Listerine Total Care if the true facts had been known.

90.     The negligent actions of Defendants caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT VIII
### Fraud

91.     Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

92.     Plaintiff brings this claim individually and on behalf of the members of the Class and Subclass against all Defendants.

93.     As discussed above, Defendants made false and misleading representations, including the Misrepresentation, and failed to disclose that the loss of tooth enamel is permanent, and it cannot be restored by using Listerine Total Care.  Defendants had a duty to disclose this information.

94.     The false and misleading representations and omissions were made with knowledge of their falsehood.

95.     The false and misleading representations and omissions were made by Defendants, upon which Plaintiff and members of the Class and Subclass members reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and Class and Subclass members to purchase Listerine Total Care.

96.     The fraudulent actions of Defendants caused damage to Plaintiff and members of the Class and Subclass, who are entitled to damages and other legal and equitable relief as a result.

## **RELIEF DEMANDED**

97. WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek a judgment against Defendants, as follows:

    a.    For an order certifying the nationwide Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as a representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;

    b.    For an order declaring that Defendants' conduct violates the statutes referenced herein;

    c.    For an order finding in favor of Plaintiff, the nationwide Class, and the Subclass on all counts asserted herein;

    d.    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

    e.    For prejudgment interest on all amounts awarded;

    f.    For an order of restitution and all other forms of equitable monetary relief;

    g.    For injunctive relief as pleaded or as the Court may deem proper; and

    h.    For an order awarding Plaintiff and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated: May 23, 2014

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: _____
Neal J. Deckant

Scott A. Bursor (SB1141)
Joseph I. Marchese (JM1976)
Neal J. Deckant (ND1984)
Yitzchak Kopel (YK5522)
888 Seventh Avenue
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: scott@bursor.com
         jmarchese@bursor.com
         ndeckant@bursor.com
         ykopel@bursor.com

*Attorneys for Plaintiff*